**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| STACY EDEY, KELLIE HIGH, and RONNICE LEE, *on behalf of themselves and all similarly situated individuals*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 2:25-cv-554 |
| NAVY FEDERAL CREDIT UNION, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Stacy Edey, Kellie High, and Ronnice Lee, on behalf of themselves and the Settlement Class Members, by counsel, submit this Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION

Plaintiffs filed this Class Action after Defendant Navy Federal Credit Union ("NFCU") held them liable for loans that Plaintiffs did not apply for or authorize, and from which Plaintiffs did not benefit. In other words, personal loans were taken out by unknown persons, without permission from Plaintiffs, using Plaintiffs' NFCU account memberships. Plaintiffs allege that, as to themselves and the putative class, NFCU acted negligently when it failed to stop fraudsters from taking out personal loans in its customers' names despite several indicia of fraud, including the fraudster's use of non-historic devices (e.g., computers or cell phones not previously familiar to the NFCU membership) and changed email addresses that allowed the fraudsters to directly receive the loan documents from NFCU upon application. Then, despite notice from Plaintiffs, NFCU did not cancel the loans. Plaintiffs also allege that NFCU breached its membership agreement by

failing to verify, as agreed, that its customers (and not someone posing as its customers) were the loan applicants before opening the accounts. In addition, Plaintiffs allege claims for the breach of the covenant of good faith and fair dealing, unjust enrichment, and conversion.

After the filing of a 25-page motion to dismiss, the exchange of informal discovery, and several substantive settlement negotiations, including a mediation with an independent and respected mediator, Plaintiffs and NFCU entered into a Settlement Agreement and Release ("Settlement Agreement"), which the parties have attached to the Motion for Preliminary Approval. (ECF No. 16-1.) The proposed settlement affords significant relief to the Settlement Class Members, including: (i) the cancelation of approximately $5,000,000 in personal loans; (ii) a refund of all payments made on the loans in the amount of approximately $3,000,000; (iii) the deletion of all credit reporting relating to the loans; and (iv) the implementation of a straightforward claims process that will allow Settlement Class Members to recover $250 in addition to the automatic reimbursement. (Settlement Agreement §§ 4.3.1; 4.3.2; 4.3.3; 4.3.4.) Combining the canceled debt and the reimbursements to the Settlement Class Members, the total monetary benefit to the Settlement Class Members is approximately $8,000,000. Additionally, if every consumer submits a claim, the Settlement Class Members will receive, in the aggregate, an additional $375,000. Notwithstanding that ample relief, the Settlement Class Members also retain any claim for actual damages that they may have relating to violations by NFCU of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). (*Id.* § 4.4.1.)

Under Federal Rule of Civil Procedure 23, Plaintiffs and NFCU now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order Preliminary Approving Settlement and Directing Notice to Class. A final motion and proposed

order supporting the fairness of the proposed class action settlement will be submitted: (1) after Settlement Class Members have received notice providing them an opportunity to object or opt-out; and (2) before the Court's Final Approval Hearing.

For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## II. SETTLEMENT TERMS

### *a. The Settlement Class*

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> All persons who, as members of Navy Federal Credit Union, between January 1, 2023, and January 31, 2025, were provided an Eligible Loan by Navy Federal Credit Union.

(Settlement Agreement § 2.21.) The Settlement Agreement defines "Eligible Loan" as "a personal loan for which Defendant has determined, within ten days after Preliminary Approval, that: (i) the personal loan application was submitted to Defendant using a Non-Historic Device; (ii) Defendant funded the personal loan by depositing funds into the member's account; (iii) the member submitted a claim to Defendant disputing the personal loan as fraudulent; (iii) Defendant denied the member's claim in whole or in part; and (iv) Defendant did not recover the personal loan funds in full." *Id.* § 2.9. Based on a review of its records, NFCU estimates that there are approximately 1,500 Settlement Class Members.

### *b. Consideration to the Settlement Class*

The proposed class action settlement provides significant and meaningful automatic relief to consumers nationwide. First and foremost, it cancels $5,000,000 in fraudulent loans, refunds $3,000,000 in payments that were made by the Settlement Class Members, and removes negative reporting of the loan from the Settlement Class Members' credit reports. It also allows the

Settlement Class Members to obtain additional relief through a simple claims process. Plaintiffs achieved the proposed settlement after the parties exchanged informal discovery, briefed a motion to dismiss, and mediated the case in arm's-length settlement negotiations before Mediator Rodney A. Max. Esq. At each juncture, NFCU denied every allegation of wrongful conduct and damages made by Plaintiffs, asserted numerous defenses to Plaintiffs' claims, and denied that this matter satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23. Plaintiffs, nonetheless, negotiated a settlement that will provide substantial financial benefit to consumers nationwide.

*First*, NFCU will cancel the loans at issue as disputed debts. Thus, the loans will no longer exist, and the canceled balances will not be attributed to the Settlement Class Members.

*Second*, NFCU will reimburse the Settlement Class Members any payments made on the loans at issue. Victims of identity theft—like the Settlement Class Members—often pay debts that they do not owe to prevent negative credit reporting. This Settlement returns those payments to the Settlement Class Members. These payments will be made automatically and will include reimbursement for any offsets or set offs taken from the Settlement Class Members' accounts by NFCU.

*Third*, NFCU will request the deletion of tradelines relating to the loans as reported to Equifax, Experian, and Trans Union. NFCU will also request that all credit inquiries from the applications of the loans be deleted from each Settlement Class Members' credit files.

*Fourth*, the Settlement Class Members will be afforded the opportunity to recover additional actual damages in an amount of $250 each by completing and submitting a straightforward Claim Form. (*Id.* § 4.3.4.)

*Fifth*, NFCU will pay the costs of notice and administration separately from the settlement payments. (*Id.* § 4.2.6.) NFCU also will separately pay any attorneys' fees and service awards that the Court may award at Final Approval separately from the benefits that the Settlement Class Members receive. (*Id.*)

The relief provided by the proposed class action settlement is significant. All consumers will receive automatic reimbursements, canceled loans, and tradeline deletion, and many will receive additional relief.

#### *c. Class Action Fairness Notice*

NFCU will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories. (Settlement Agreement § 4.2.5.)

#### *d. Attorneys' Fees, Costs, and Service Awards*

Class Counsel will apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $250,000. (*Id.* § 5.3.) Plaintiffs also will apply for service awards of $15,000 each for their roles as class representatives to compensate them for their efforts in prosecuting this case, including retaining counsel, assisting in preparation of the Complaint, and attendance at an all-day settlement conference in Washington, D.C. These amounts will not diminish the benefits that the Settlement Class Members receive as NFCU has agreed to pay these amounts separate and apart from the benefits to the Settlement Class Members.

#### *e. Release of Claims*

In return for this consideration, the Settlement Class Members will provide the following release to the Released Parties:

> Upon the Effective Date, each member of the Settlement Class who has not validly excluded himself or herself, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf, acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released, and discharged all the Released Parties of and from all claims, rights, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which he or she ever had or now has under any laws resulting from, arising out of, or regarding the Eligible Loans or the facts alleged in the Complaint that could have been asserted in the Litigation (the "Released Claims"). **However**, the Settlement Class Members do not release, and the Released Claims do not include, any claim for actual damages relating to violations by Defendant of 15 U.S.C. § 1681s-2(b).

(*Id.* § 4.4.1.)

#### *f. Notice and Exclusions*

Class notice will be a combination of email notice to verified email addresses or U.S Mail to each Settlement Class Member. If approved by the Court, the Settlement Administrator, American Legal Claim Services, will: (i) email direct notice to Settlement Class Members at the email address used to open and maintain the Settlement Class Members' NFCU account(s); and (ii) mail direct notice to the Settlement Class Members at the address used to open and maintain the Settlement Class Members' NFCU account(s). (*Id.* §§ 4.2.1, 4.2.3.)

If a Notice is returned as undeliverable, the Settlement Administrator will re-mail the Notice via standard U.S. Mail, postage prepaid, to those Settlement Class Members for whom an alternative mailing address can be reasonably located. (*Id.* § 4.2.3.) The Settlement Administrator will first attempt to re-mail the Notice to the extent that it received an address change notification from the U.S. Postal Service. (*Id.*) If an address change notification form is not provided by the U.S. Postal Service, the Settlement Administrator may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address. (*Id.*)

Additionally, the Settlement Administrator will post important settlement documents, such as the operative Complaint, the Notice, the Settlement Agreement, and the Preliminary Approval Order, to the Settlement Class Website. (*Id.* § 4.2.4.) The Settlement Class Website will also include a portal for the Settlement Class Members to access the Claim Form, a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the Final Approval Hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be made. (*Id.*)

Any Settlement Class Member who wants to be excluded from the class must advise the Settlement Administrator in writing, and his or her opt-out request must be postmarked no later than the opt-out deadline. (*Id.* § 4.4.3.1.) The Settlement Class Member's opt-out request must contain the Settlement Class Member's full name, address, and telephone number. (*Id.*) Further, the Settlement Class Member must include a statement in the written request that he or she wishes to be excluded from the Settlement Agreement. (*Id.*) Requests for exclusion that do not comply with any of the foregoing requirements are invalid.

## III. ARGUMENT

### *a. Certification Standard*

Courts within the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts." (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910))). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources. As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class

> actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)). Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases). A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement. *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement. *Id.* at 547. Second, class members must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies

Rule 23's requirements and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

### ***b. The Settlement Class Meets the Certification Elements***

#### *i. The Settlement Class satisfies Rule 23(a)*

##### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). But where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here. As detailed above, there are around 1,500 Settlement Class Members, including Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

##### 2. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of

law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share multiple questions of law and fact. The Settlement Class Members allege that NFCU impermissibly allowed fraudsters to open personal loan accounts in the Settlement Class Members' names or otherwise failed to verify the applicants' identities. The practices at issue for these claims are identical across all class members. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

3. Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned

with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' claims arise from NFCU's conduct in allowing the borrowing of personal loans in Plaintiffs' names without Plaintiff's authorization. As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiffs are members. Thus, in seeking to prove their claims, Plaintiffs will advance the claims of the Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

4. Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of class representative, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled many consumer-protection class actions. Plaintiffs' lead counsel effectively has handled several consumer-protection and complex class actions, typically as lead or co-lead counsel. *See, e.g.*, *Clark v. Trans*

*Union, LLC*, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); *Campos-Carranza v. Credit Plus, Inc.*, No. 1:16-cv-120, ECF No. 80 at 5:3-7 (E.D. Va. Feb. 17, 2017) ("I think this is an extremely, as I say, extremely fair, reasonable, and adequate settlement. Again, the claims -- and I think being generous on the time limit for the claims was also appropriate. So I have no difficulty in signing this order."); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) ("[T]he Court finds that Thomas'[s] counsel is qualified, experienced, and able to conduct this litigation so as to fully and adequately represent both classes. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases around the country."); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016) ("[T]his Court would have difficulty overstating Class Counsel's experience in the area of FCRA class action litigation."); *Dreher v. Experian Info. Sols., Inc.*, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Burke v. Seterus, Inc.*, No. 3:16-cv-785, ECF No. 41 at 9:19-22 (E.D. Va. 2017) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them."); *James v. Experian Info. Sols., Inc.*, No. 3:12-cv-902 (E.D. Va. Oct. 29, 2014) (ruling on final approval in open court and finding "experience of counsel on both sides is at the top level of representation in cases of this sort and, indeed, perhaps beyond that"); *see also* Declaration of Kristi Kelly ¶¶ 9–10 (attached as Ex. 1) ("Kelly Decl."); Declaration of Dale Pittman ¶ 16 (attached as Ex. 2) ("Pittman Decl.").

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek monetary relief for NFCU's allegedly

unlawful actions. Plaintiffs are members of the Settlement Class. Considering the similarity of the claims, there is no potential for conflicting interests. Plaintiffs also have been very active in this case, including assisting with the preparation of the Complaint and in-person participation in the mediation with Rodney A. Max, Esq. (*See* Kelly Decl. ¶ 15.) As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

*ii. The Settlement Class satisfies Rule 23(b)(3)*

The proposed settlement contemplates permitting opt-outs under Rule 23(b)(3). An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

1. Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys*, 212 F.R.D. at 323 (finding predominance

because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues for the Settlement Class Members' claims are common and relate to standardized practices of NFCU for approving personal loans. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is necessary to satisfy predominance.

2. Superiority

Finally, the Court should determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[1] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

[1] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate. And the Settlement Class Members' individual claims are small, thus providing little incentive for individual litigation. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

A class action is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly given the small amount of the damage claims that would be available to individuals. Moreover, apart from the fact that the proposed settlement allows for the recovery of an automatic reimbursement payment and, through the claims process, other actual damages, certification permits individual claimants to pursue their own actions separately if they believe they can recover more in an individual suit, either by opting out entirely or through a lawsuit alleging a violation of 15 U.S.C. § 1681s-2(b). Thus, both predominance and superiority are satisfied. For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

### *c. The Settlement Satisfies the Requirements of Rule 23(e)(2)*

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payments; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3);
>
> (D) the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, 2020 WL 7482191, at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing

line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

i. *Plaintiffs and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of the Settlement Class Members are fully aligned as they were all subjected to the same deficient investigation practices. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate in a comparable case because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

Additionally, the least experienced of Class Counsel has been practicing in the field of consumer protection for almost 20 years, and they believe that this settlement stacks up very favorably when compared to other settlements over that time. (*See* Kelly Decl. ¶ 16; Pittman Decl. ¶¶ 19–21.) Courts recognize that the opinion of experienced and informed counsel in favor of

settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience).

*ii. Negotiations Were at Arm's Length and Involved a Respected Mediator.*

The second factor examines whether the settlement "was negotiated at arm's length" Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)). Here, there is no evidence suggesting the presence of collusion or fraud between the parties.

To help confirm that negotiations were at arm's length, courts look at several other factors, including the presence of a mediator. As the leading class action treatise explains: "There appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator." Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles"). Here, Plaintiffs and NFCU had several negotiations and eventually used a neutral mediator, Rodney A. Max, Esq.,

to help reach the terms of their agreement. (*See* Kelly Decl. ¶ 15.) The involvement of Rodney A. Max, Esq., establishes that there was no collusion among the parties.

*iii. The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy. *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal. This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation. Most notably, from the start of litigation, NFCU has been adamant that it has defenses to Plaintiffs' claims, as articulated in its 25-page motion to dismiss. Were NFCU to dig in on its defenses, this case could involve substantial briefing at the motion to dismiss, the class certification, and the summary judgment stages, as well as a trial and appeals. The settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Settlement Class Members now.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, the Settlement Class Members will receive significant settlement benefits automatically. To be sure, the personal loans will be canceled, cash reimbursements will be

automatically distributed, and tradelines will be deleted. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Of course, Class Members will have the opportunity to obtain additional compensation through the straightforward claims process, but that process need not be completed for Class Members to benefit from the automatic relief, including loan cancelation, reimbursement, and tradeline deletion. Because that automatic relief is based on objective criteria and does not require any action by Settlement Class Members, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, there is no sign that Class Counsel left any money on the negotiating table. Instead, they have obtained approximately $8,000,000 in debt cancellation and reimbursements to Settlement Class Members, along with the potential for Settlement Class Members to collect $375,000 more in the aggregate. This is significant consideration for the Settlement Class Members' claims.

The benefits to the Settlement Class Members will not be diminished by the payment for Notice and Administration, attorneys' fees, or service awards, because NFCU is paying each of those items separate and apart from the benefits provided to the Settlement Class Members. It is also important to note that the attorneys' fee and service award component of the settlement was only discussed after all other material settlement terms had been finalized. And the attorneys' fees were also negotiated under the supervision of Mediator Rodney A. Max, Esq., who is experienced enough to notice if Class Counsel were compromising the class members' claims for their own

benefit. *Flint Water Cases*, 571 F. Supp. 3d at 782. As to the timing of the attorney fee award request, "courts are to consider this to prevent situations in which the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Id.* There is no such concern here as the proposed Notice to the Settlement Class will identify the requested attorneys' fees.

Finally, pursuant to Rule 23(e)(3), each Plaintiff individually resolved their respective Fair Credit Reporting Act claims for violations of 15 U.S.C. § 1681s-2(b), as asserted as individual claims in the Complaint. Notably, the other Settlement Class Members have retained the right to assert those claims on their own behalf as the Settlement does not release these claims.

*iv. The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The settlement here achieves this balance. First, the Settlement Class Members will receive—automatically—cancellation of the fraudulent loans and refunds of the amounts that they paid on the loans at issue. Second, through the claims process, Settlement Class Members will have the opportunity to obtain an additional $250. A recovery under the claims process will result in the same relief to all Settlement Class Members, and the only difference in monetary

compensation derives from the different amounts that Settlement Class Members paid on the loans. Settlement Class Members, therefore, will be treated equitably relative to each other.

#### *d. The Proposed Notice and Notice Plan Satisfy Rule 23*

Following preliminary approval, class members must be given notice about the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, which is an Exhibit to the Settlement Agreement, satisfies these requirements. (Settlement Agreement § 4.2.)

The proposed notice program will provide individual direct notice. (i) via email to Settlement Class Members at the email address used to open and maintain the Settlement Class Members' NFCU account; and (ii) via mail to Settlement Class Members at the address used to open and maintain the Settlement Class Members' account(s) at issue. (*Id.* §§ 4.2.1, 4.2.3.)

If notices are returned as undeliverable, the Settlement Administrator will re-mail the Notice via standard U.S. Mail, postage prepaid, to those Settlement Class Members for whom an alternative mailing address can be reasonably located. (*Id.* § 4.2.3.) The Settlement Administrator will first attempt to re-mail the Notice to the extent that it received an address change notification from the U.S. Postal Service. (*Id.*) If an address change notification form is not provided by the

U.S. Postal Service, the Settlement Administrator may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address. (*Id.*)

Additionally, the Settlement Administrator will post important settlement documents, such as the operative Complaint, the Notice, the Settlement Agreement, and the Preliminary Approval Order to the Settlement Class Website. (*Id.* § 4.2.4.) The Settlement Class Website will also include a portal for Settlement Class Members to obtain the Claim Form, a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the Final Approval Hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be made. (*Id.*)

The settlement's robust notice and administration plan will ensure that the most Settlement Class Members receive the payments to which they are entitled. As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* Manual for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, 2013 WL 5881422, at *5 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notice and Notice Plan, together, represent the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. The Notice and Notice Plan should be approved by the Court.

## IV. CONCLUSION

The proposed class action settlement is an excellent result considering the circumstances of the litigation and strength of Plaintiffs' case. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs request that the Court issue an Order that: (i) grants preliminary approval to the proposed settlement; (ii) approves of the proposed Notice filed concurrently with the Motion for Preliminary Approval; (iii) orders that the proposed Notice be immediately emailed and mailed to Settlement Class Members; (iv) approves the appointment of American Legal Claim Services as the Settlement Administrator; and (v) sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of preliminary approval.

**PLAINTIFFS**

*/s/ Kristi C. Kelly*

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
E-mail: kkelly@kellyguzzo.com
E-mail: aguzzo@kellyguzzo.com
E-mail: casey@kellyguzzo.com
E-mail: pat@kellyguzzo.com
E-mail: matt@kellyguzzo.com

Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street

Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

*Counsel for Plaintiffs*